# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**DAVID J. ELKINS,**

  **Plaintiff,**

   v.

**FEDERAL AVIATION
ADMINISTRATION,**

  **Defendant.**

**Civil Action No. 14-1791 (JEB)**

## MEMORANDUM OPINION

On May 27, 2014, *pro se* Plaintiff David Elkins observed a plane circling his house in St. Petersburg, Florida.  As this was not a novel event, Elkins believed he had become the subject of aerial surveillance by law enforcement.  In an effort to uncover the identity of the plane's operator, Plaintiff submitted two Freedom of Information Act requests to the Federal Aviation Administration, seeking records pertaining to this flight.  In response to these requests, the FAA conducted a search and released to him a number of documents in full and others in part. Dissatisfied with both the FAA's search efforts and its withholdings, Elkins filed this suit in October 2014.  The FAA now moves for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies and that it provided all the responsive, non-exempt documents that it could locate.  Plaintiff opposes and separately moves for discovery.  The Court will grant Defendant's Motion in part and deny it in part, but ultimately concludes that no discovery is warranted.

## I.   Background

By now, Elkins is a frequent filer of FOIA requests with the FAA.  See Elkins v. Fed.

Aviation Admin., No. 14-476, 2014 WL 4243152, at *1 (D.D.C. Aug. 28, 2014).  Since 2005, he

has submitted several requests to the agency seeking records pertaining to aircraft he has

observed flying overhead.  See id.  He believes that the government is seeking to intimidate him

via surveillance.  See Compl. at 6.  Elkins claims that the requested information will shed light

on "on-going, long term, illegal, unwarranted surveillance, specifically focusing on the plaintiff

for his continued use of the Freedom of Information Act."  Id.  This suit concerns two discrete

FOIA requests: Request No. 2014-9669ES, submitted on May 27, 2014, which seeks documents

pertaining to the flight he witnessed on that same day, and Request No. 2015-1941, submitted on

September 15, 2014, which seeks records of communications between the FAA and other

government agencies.

In 2014-9669ES, Plaintiff requested the following records related to a "high wing Cessna

type aircraft" circling a "certain location between 8 [AM] and 10 [AM] on May 27, 2014":

1. Name of law enforcement agency operating the aircraft;
2. Radar plot of aircraft[;]
3. All records presented to the FAA showing probable cause or
   warrants to conduct surveillance[;]
4. All communications between the U.S. Department of Justice
   and the FAA concerning this flight and past flights[;]
5. All records of the U.S. Department of Justice requesting that
   the FAA deny the requestor's request;
6. N-number of the aircraft;
7. All records of Mode S attached to the aircraft; and
8. Inflight communications between the aircraft and Tampa
   Airport Traffic Control or Miami Airport Traffic Control.

Compl., Exh. 3 (FOIA Appeal 2014-009669A).  He received a response on July 10, 2014, stating

that the FAA could locate only two records and that they were being withheld pursuant to FOIA

Exemption 7(E).  See id.  These two documents are: (1) a radar plot of the aircraft in question

and (2) an FAA Order containing beacon codes and call signs of various types of aircraft.  See id. at 2.

Next, in 2015-1941, Plaintiff requested that the FAA provide the following records:

1.  All communications between the FAA SHMS [Security and Hazardous Materials Safety Division] and the DEA or FBI or DOJ, DHS, EOUSA, Department of Homeland Security, concerning the requestor David Elkins and it's [sic] investigation and surveillance[;]
2.  All records of the FAA SHMS when this investigation began, year, date, month[;]
3.  All records of agreements between the FAA and DEA or DOJ, EOUSA, DHS, to withhold determination of records requests and appeal[;]
4.  All records of FAA or SHMS involvement with this investigation with the DEA or DOJ, EOUSA, DHS and FBI and Portland Police, Oregon[;]
5.  All records of what violation of Federal Law or State law that were presented to the FAA SHMS to substantiate this investigation and aerial surveillance, court orders, warrants, grand jury's sequesters, by the DEA, FBI, DOJ, EOUSA, DHS[;]
6.  All records of communication between the FAA or SHMS and DEA agent Robert Robbins telling him of David Elkins records request 2010-008893ES[;]
7.  All records presented to the FAA by the DEA or FBI or DOJ, EOUSA, DHS as to what tracking technology was to be used on aircraft[;]
8.  All records of communication between Paula Watson and FAA's SHMS[; and]
9.  All records of memorandum of agreement or memorandum of understanding between FAA, FAA SHMS and the DEA, FBI, or DOJ, EOUSA, DHS, concerning requestors past and Present FOIA request[.]

Def. Mot., Exh. A (September 15, 2014, Request) at 1.  In response to this request, the FAA conducted a search and released 13 pages in full and 20 in part.  See Def. Mot. at 9-10.

In bringing this suit, Plaintiff seeks to compel disclosure of the withheld records in both requests and contends that the FAA failed to adequately search for others.  See Compl. at 6-7.

3

The agency has now moved for summary judgment.  In opposing, Elkins has also separately sought permission to conduct discovery.

## II.   Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party.  See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of

other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal

quotation marks omitted).  "Unlike the review of other agency action that must be upheld if

supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the

burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter

de novo.'"  Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755

(1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### III.  Analysis

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open

agency action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361

(1976) (citation omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to

the functioning of a democratic society, needed to check against corruption and to hold the

governors accountable to the governed."  John Doe Agency v. John Doe Corp., 493 U.S. 146,

152 (1989) (citation omitted).  The statute provides that "each agency, upon any request for

records which (i) reasonably describes such records and (ii) is made in accordance with

published rules . . .  shall make the records promptly available to any person."  5 U.S.C.

§ 552(a)(3)(A).  Consistent with this statutory mandate, federal courts have jurisdiction to order

the production of records that an agency improperly withholds.  See 5 U.S.C. § 552(a)(4)(B);

Reporters Comm., 489 U.S. at 755.  "At all times courts must bear in mind that FOIA mandates a

'strong presumption in favor of disclosure' . . . ."  Nat'l Ass'n of Home Builders v. Norton, 309

F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

The Court will consider each of Elkins's request separately and then assess the propriety

of discovery here.

A.  Request No. 2015-1941

Although the FAA did produce some documents in response to Request 2015-1941, it argues that the Court should not inquire into its search or its withholdings.  Contending that Plaintiff failed to exhaust his administrative remedies in connection with this request, Defendant asserts that his suit is premature.  More specifically, the agency maintains that Elkins filed this action prior to the expiration of the statutory time period in which the FAA was required to respond.  Plaintiff disagrees that he jumped the gun.

It is settled law in this Circuit that although exhaustion of a FOIA request is not jurisdictional, it is "generally required before filing suit in federal court."  Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (citing Oglesby v. Dep't of the Army, 920 F.2d 57, 61 (D.C. Cir. 1990)) (exhaustion requirement gives agency opportunity to exercise discretion and expertise and develop factual record to support its decision).

There is an exception, however, for "constructive exhaustion."  "[I]f an agency fails to make and communicate its 'determination' whether to comply with a FOIA request within certain statutory timelines, the requester 'shall be deemed to have exhausted his administrative remedies.'"  Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n, 711 F.3d 180, 184 (D.C. Cir. 2013) (citing 5 U.S.C. § 552(a)(6)(C)(i).  A FOIA requester who files suit prior to the deadline by which an agency is required to respond has therefore not constructively exhausted his administrative remedies, and such a premature suit is subject to dismissal.  See generally Bonner v. Soc. Sec. Admin., 574 F. Supp. 2d 136, 138-39 (D.D.C. 2008).

The statutory time period applicable here is straightforward.  FOIA provides that, upon receiving a request, an agency has 20 days (excluding Saturdays, Sundays, and legal public

holidays) in which to respond.  See 5 U.S.C. § 552(a)(6)(A)(ii).  Under certain circumstances –

three of which are relevant here – an agency may be granted an extension of time.  First, when a

plaintiff sends a request to the wrong agency component, the agency has up to 10 additional

working days to route the request to the correct component.  See id. § 552(a)(6)(A)(ii).  Second,

when an agency seeks clarification of a request from the requester, the clock is tolled until the

agency receives a response.  See id. § 552(a)(6)(A)(ii)(I).  Third, when the agency determines

that "unusual circumstances" exist, it is permitted an additional 10 days in which to respond.  See

id. § 552(a)(6)(B)(i).

    The FAA here received Request No. 2015-1941 on September 16, 2014, but Plaintiff

faxed it to the wrong office.  See Def. Mot., Exh. 4 (Declaration of Jeb Kreischer), ¶ 7.  As this

triggered the first 10-working-days extension under 5 U.S.C. § 552(a)(6)(A)(ii), the 20-day

response period did not begin to run until September 30, 2014.  The FAA replied to Plaintiff on

October 8, 2014 – six working days into the 20-day period – by asking for clarification of an

acronym used in his request, thereby tolling the time to respond.  See id., ¶ 9.  In this same reply,

it notified Elkins that his request constituted unusual circumstances, thus providing an additional

10 days for the FAA's answer.  See id., ¶¶ 10-12.  After receiving no response, the FAA sent a

follow-up letter on November 6, 2014, including a note explaining that it was the second such

communication.  See id., ¶ 11.  Plaintiff replied by voicemail with the requested clarification on

November 12, 2014.  See id., ¶ 12.  Because the FAA was "awaiting such information" from

Plaintiff, see 5 U.S.C. § 552(a)(6)(A)(ii)(I), the period to respond only then resumed.  See

Kreischer Decl., ¶ 12.  The agency, consequently, had an additional 24 working-days (the

original 14 remaining plus 10 for unusual circumstances) from that point to respond – i.e., until

December 17, 2014.  Plaintiff filed his Complaint on October 23, 2014 – well before that deadline.  See id., ¶ 13.

Elkins maintains that he never received the FAA's letter of October 8 and that the first communication he received from the agency was on November 10, 2014, after he had filed suit and after the statutory time period would have otherwise expired.  While Plaintiff may not have received the letter, the FAA has provided a declaration attesting that it was indeed mailed to Elkins on October 8, 2014.  See Kreischer Decl., ¶ 9.  "Government records and official conduct [are generally accorded] a presumption of legitimacy," Ray, 502 U.S. at 179, and it will take more than Plaintiff's non-receipt to rebut the presumption.

In any event, the consequence of such a ruling is simply to require Elkins to exhaust his administrative remedies with the FAA, which will permit the agency to develop a factual record and apply its expertise and discretion to the request.  See Oglesby, 920 F.2d at 61.  This is a reasonable course, particularly in light of some of the technical information and inter-agency communications sought by Plaintiff.  The Court, consequently, will grant the FAA's Motion as to Request 2015-1941.

### B.  Request No. 2014-9669ES

Exhaustion is not a defense that the FAA raises in regard to Elkins's other request, 2014-9669ES.  This one contained nine discrete sub-parts, only two of which resulted in the FAA's locating any responsive records.  As the FAA described, "Plaintiff's request for the name of a law enforcement agency operating a particular aircraft yielded [one document that was] withheld under Exemption 7(E) on the request of the Other Governmental Agency.  The second responsive record was a radar plot, which also was withheld under Exemption 7(E)."  Def. Mot. at 8 (internal citations omitted).

Unhappy with both the agency's search efforts and its withholding of the two responsive records, Plaintiff seeks to compel the FAA to conduct a more thorough search and to produce the two withheld documents.  The Court looks at each question separately.

      1.  *Adequacy of Search*

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  "When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."  SafeCard, 926 F.2d at 1201.  To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail."  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA.  See id.  On the other hand, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  Truitt, 897 F.2d at 542.

Here, the documents sought by Plaintiff can be grouped into two general categories: (1) records regarding the flight, and (2) inter-agency communications.  With respect to the first category, the request was forwarded to the Tampa and Miami Air Traffic Control Towers

because these facilities "cover the airspace referenced in the request," <u>see</u> Def. Mot., Exh. 6

(Declaration of Carol Might 9669ES), ¶ 9, and maintain the radar data, voice recordings, and

other records related to air traffic.  <u>See</u> Might Decl. 9669ES, ¶ 5.  According to the FAA, the

radar recordings "were pulled for a specific time based on the request.  One aircraft reflected the

record being requested.  Associated audio records were pulled and listened to in order to

determine whether there were any responsive records." <u>Id.</u>, ¶ 9.  The only responsive records

that the FAA located are the two previously described.

       With respect to inter-agency communications, the request was forwarded to and

processed by Air Traffic Organization, Systems Operations Services, Security Office (AJR-2)

"because this office has the responsibility to be a liaison between Other Government Agencies

(OGA) and the air traffic control facilities." <u>Id.</u>, ¶ 10.  The FAA conducted a search of emails

and electronic records at AJR-2.  <u>See id.</u>, ¶ 13(i).  Many of the records sought by Plaintiff could

not be located because the inter-agency communications he seeks are generally oral and

therefore do not exist in a tangible format.  <u>See id.</u>, ¶ 13.  FOIA, of course, deals only with

"agency <u>records</u>, not information in the abstract."  <u>See</u> <u>Forsham v. Harris</u>, 445 U.S. 169, 185

(1980) (internal quotations omitted) (emphasis added).  The FAA, nonetheless, conducted a

search of AJR-2's electronic files in an effort to locate records it had reason to believe did not

exist.  <u>See</u> Might Decl. 9669ES, ¶ 13(i).  Nothing additional was found.

       The FAA's efforts here are commendable, and the affidavits are somewhat more

thorough than in Plaintiff's related case.  <u>See</u> <u>Elkins v. Fed. Aviation Admin.</u>, No. 14-476, 2015

WL 1743744, at *5 (D.D.C. Apr. 16, 2015) (finding Might's declaration to be wanting for lack

of detail).  The FAA has described in reasonable detail the files and offices it searched, the

reasons those locations were chosen, and how the search was carried out.  The agency has,

however, failed to aver that it has searched all the locations likely to contain relevant documents. Where the government has not made such an attestation, courts have typically found that an issue of material fact exists as to the adequacy of its search.  In Jefferson v. Bureau of Prisons, No. 05-848, 2006 WL 3208666 (D.D.C. Nov. 7, 2006), for example, the court found the FBI's search inadequate because its declaration did not "aver that the FBI searched all files likely to contain responsive records."  Id. at *6.  Likewise, in Bonaparte v. U.S. Dep't of Justice, 531 F. Supp. 2d 118 (D.D.C. 2008), the court found the search inadequate in part because the defendants had not averred that "all files likely to contain responsive records were searched."  Id. at 122.  And in Maydak v. Dep't of Justice, 362 F. Supp. 2d 316 (D.D.C. 2005), the court lamented that "no one avers, and the record does not otherwise permit the inference that all files likely to contain responsive records were searched."  Id. at 326.

Here, similarly, the FAA has not indicated that it has searched all the offices and records systems likely to contain responsive records.  It identified only the Air Traffic Control facilities because official FAA records are "generally kept" there, see Might Decl. 9669ES, ¶ 5, and AJR-2 because that office has the responsibility to be a liaison between other government agencies and the air-traffic-control facilities.  See id., ¶ 10.  Nowhere in the FAA's declaration does Might aver that all files likely to contain responsive records were searched or that no other offices would likely contain responsive documents.  Although this might seem to be a technical requirement, this Court must follow the dictates of FOIA.  The FAA, therefore, must provide a clearer explanation as to why there are no other locations where responsive files could be found.

Plaintiff further objects to the FAA's failure to provide the "N number" and "Mode S" code – which are numeric identifiers – assigned to the aircraft in question.  See Pl. Opp. at 13-14. The FAA asserts that no records could be found containing the "N Number," and that the aircraft

used a call sign that only the law-enforcement agency can employ to access the "N Number."
<u>See</u> Might Decl. 9669ES, ¶ 13(b).  Similarly, the FAA could not locate or look up the "Mode S"
code without the unknown "N Number," and no other records could be found containing the
"Mode S" code.  <u>See id.</u>, ¶ 13(g).  Plaintiff appears to request that the agency use a confidential
algorithm in its computer system in order to translate whatever identifying information it has
about the aircraft into the "N Number."  <u>See</u> Pl. Opp. at 13-14.  Yet, "FOIA imposes no duty on
the agency to <u>create</u> records."  <u>Forsham</u>, 445 U.S. at 186 (emphasis added).  Since the agency's
search did not uncover records related to the "N number" or "Mode S" code, its obligation ended
there.

Because the FAA failed to aver that the offices and files it searched were the only ones
likely to contain records responsive to Request 2014-9669ES, the Court concludes that summary
judgment on the search is not warranted.

> 2.  *FAA's Withholdings*

In response to Request 2014-9669ES, the FAA withheld in full two documents pursuant
to Exemption 7(E), which covers:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement
> records or information . . . would disclose techniques and
> procedures for law enforcement investigations or prosecutions, or
> would disclose guidelines for law enforcement investigations or
> prosecutions if such disclosure could reasonably be expected to
> risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E).

One document is a radar plot of an aircraft at a particular time.  <u>See</u> Might Decl. 9669ES,
¶ 13(c).  The FAA asserts that disclosure of the radar plot and included call sign would
compromise "an ongoing National Security investigation, by revealing the techniques used by

the [involved agency], including [its] use of aircraft to detect, investigate, and interdict criminal activity." Id. The Court analyzed a similar radar plot withheld on a similar rationale in its last Elkins Opinion and concluded that the FAA had not "met its burden of establishing that [the radar plot was] compiled for law-enforcement purposes." Elkins v. Fed. Aviation Admin., No. 14-476, 2015 WL 1743744, at \*8 (D.D.C. Apr. 16, 2015) (emphasis added). As the FAA has provided no additional information to show why the result here should be any different, the radar plot must be turned over to Elkins.

The second document is a little more complicated. According to the FAA's administrative-appeal response letter, the document is "an FAA Order containing beacon codes and call signs of various types of aircraft." FOIA Appeal 2014-009669A at 2. The FAA maintains in its declaration, conversely, that disclosure of that document could undermine the operations of the other unnamed agency, and that it was withheld pursuant to a confidential intergovernmental order. See Might Decl. 9669ES, ¶ 13(a). This latter explanation implies the existence of two distinct documents: the underlying document and an intergovernmental order protecting that document from disclosure. Based on an *in camera* review and statements made by Might at a May 7, 2015, hearing in Plaintiff's related suit, Elkins v. Fed. Aviation Admin., No. 14-476, the Court has determined that these two documents are one and the same. The *in camera* review also made manifest that the single document is an FAA order that the Court found to be properly withheld in its previous Opinion. See Elkins, No. 14-476, 2015 WL 1743744, at \*7. As the Court concluded there, the document "was indisputably created for law-enforcement purposes; its production would disclose techniques and procedures for law-enforcement activities; and disclosure would risk circumvention of the law." Id. (citing 5 U.S.C. § 552(b)(7)(E)). That determination applies equally here.

C.  Discovery

Last, Plaintiff urges the Court to permit discovery, and he seeks to depose certain FAA officials in order to better oppose Defendant's Motion.  See ECF No. 29-1 (Plaintiff's Proposed Issues of Discovery) at 1-3.  Discovery, however, is generally inappropriate in a FOIA case.  See Freedom Watch, Inc. v. Dep't of State, No. 14-1832, 2015 WL 109837, at *4 (D.D.C. Jan. 8, 2015) (citing Govt. Accountability Project v. Dep't of Justice, 852 F. Supp. 2d 14, 27 n.5 (D.D.C. 2012)).  Elkins has offered no compelling reason to depart from this general rule.

## IV.    Conclusion

For the foregoing reasons, the Court will grant the FAA's Motion for Summary Judgment in part and deny it in part, and deny Plaintiff's Motion for Discovery.  An Order accompanies this Memorandum Opinion.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  May 12, 2015